# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN NARCISSE<br>     LA. DOC #528337 | CIVIL ACTION NO. 6:12-cv-2741 |
| VS. | SECTION P |
| | JUDGE DOHERTY |
| BURL CAIN, WARDEN | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Kevin Narcisse filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on October 23, 2012.  Petitioner is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  Petitioner attacks his 2007 conviction for second degree murder, entered by the Sixteenth Judicial District Court for Iberia Parish, for which petitioner was sentenced to life imprisonment.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons, it is recommended that this *habeas corpus* petition be **DENIED AND DISMISSED WITH PREJUDICE**.

## STATEMENT OF THE CASE

Petitioner was convicted of the second degree murder of Robert West following a jury trial on August 17, 2007.  He was sentenced to life imprisonment on September 19, 2007.  The Third Circuit Court of Appeal summarized the facts surrounding the crime as

follows:

> Robert West and three friends, Shawn Broussard, Jacobe Villery, and
> Vanity Archangel (West's fiancee), were driving around New Iberia in
> search of five dollars worth of marijuana. At the corner of Ann and Sam
> Streets, they encountered several people. When they pulled the car up to the
> curb, Brandon "B" Augustine approached the car, and Villery, who was
> familiar with Augustine from high school, told him they wanted to buy
> some marijuana. Augustine took five dollars from Villery, walked over to
> Defendant, Kevin Narcisse, and gave him the money. Defendant returned to
> the car and gave Villery a small bag of marijuana. An argument ensued
> between Defendant and the victim, Mr. West, who was a passenger in the
> car, over the quantity of marijuana. Mr. West got out of the car to confront
> Defendant but instead faced a gun. As he was attempting to flee, Defendant
> shot him six times, five times in the back and once in the back of his arm.
> The victim died as a result of the gunshot wounds. Defendant ran from the
> scene but eventually surrendered himself six weeks later.

*State of Louisiana v. Kevin Narcisse*,  996 So.2d 702, 2008 WL 4927372, *1 (La. App. 3rd

 Cir. 2008).

On November 19, 2008, the Louisiana Third Circuit Court of Appeals affirmed

petitioner's conviction and sentence.  *State of Louisiana v. Kevin Narcisse*,  996 So.2d

702, 2008 WL 4927372 (La. App. 3rd Cir. 2008).  On direct appeal petitioner asserted the

following assignments of error: (1) petitioner was subjected to an unduly suggestive and

improperly conducted photographic line-up; (2) insufficiency of the evidence[1]; and (3)

erroneous denial of petitioner's challenge for cause regarding juror Irving Thomas.[2]  The

---

[1]Petitioner incorporated a claim of erroneous denial of a new trial in this argument.

[2]Petitioner filed a  *pro se* supplemental assignment of error in the Court of Appeals, asserting
erroneous denial of a mistrial for not allowing defense counsel to ask leading questions on cross-
examination, which is not asserted in this Court, as well as additional arguments addressing the
sufficiency of the evidence and the suggestive nature of the photographic lineup.

2

Third Circuit did not reach the merits of petitioner's third claim because the claim was barred due to counsel's failure to contemporaneously object to the Court's ruling pursuant to La.C.Cr.P. article 800(A).

On October 16, 2009, the Louisiana Supreme Court denied petitioner's request for discretionary review.  *State of Louisiana v. Kevin Narcisse*,  19 So.3d 471 (La. 2009).

Petitioner filed an Application for Post-Conviction relief on July 22, 2010. Petitioner raised the following claims: (1) prosecutorial misconduct for allowing perjured testimony to go uncorrected; (2) denial of a full and complete appeal because of an incomplete record; (3) improper comment by the trial judge during voir dire; (4) ineffective assistance of counsel because counsel (a) failed to properly investigate and discover the case, (b) failed to present an adequate defense, (c) failed to object and take supervisory writs on bias of ceratin jurors, (d) failed to object to demonstration of a bloody shirt to the jury, and (e) cumulative effect of these errors constituted ineffective assistance; and (5) police officers failed to obtain exculpatory evidence. [rec. doc. 9, pgs. 11-23].

The trial court denied petitioner's fifth claim on October 11, 2010 and denied the remainder of petitioner's claims on October 14, 2010. In so doing, the Court adopted the State's argument on all claims [3] and assigned additional reasons for denial of petitioner's

---

[3]The State filed two Answers to petitioner's Application.  The first Answer filed on September 16, 2010, inadvertently omitted a response to petitioner's fifth claim for relief.  Accordingly, the State filed a supplemental Answer addressing only this claim on October 8, 2010. [rec. docs. 9, pgs. 66-70 through 9-1, pgs. 1-5; 1-3, pgs. 36-41].

ineffective assistance of counsel claims. [rec. doc. 1-3, pg. 38; 39-41]. The Trial court therefore apparently did not reach the merits of petitioner's first, third or fifth claims for relief; the State's Answer reveals that petitioner's first claim (prosecutorial misconduct for allowing perjured testimony to go uncorrected) was barred due to counsel's failure to contemporaneously object to the alleged perjured testimony as required under La.C.Cr.P. art. 841(A) and additionally barred under La.C.Cr.P. art. 930.4 because petitioner inexcusably failed to raise the claim in the proceedings leading to conviction and failed to pursue the claim on direct appeal [rec. doc. 9, pg. 67and 69], and that petitioner's third and fifth claims (improper comment by the trial judge during voir dire and police officers failed to obtain exculpatory evidence) were barred under La.C.Cr.P. art. 930.4 because petitioner inexcusably failed to raise the claims in the proceedings leading to conviction and failed to pursue the claims on direct appeal [rec. doc. 9, pg. 67; rec. doc. 1-3, pg. 36]. The State also, however, alternatively addressed the merits. [*see Id.; see also* rec. doc. 9, pg. 69-70 - rec. doc. 9-1, pg. 1-5; rec. doc. 1-3, pg. 36-37].

On December 2, 2011, the Louisiana Third Circuit Court of Appeal denied writs finding "[t]he trial court did not err in denying Relator's application for post-conviction relief." *State v. Narcisse*, 10-KH-1391 (La. App. 3 Cir. 2011); [rec. doc. 1-3, pg. 38]. On September 12, 2012, the Louisiana Supreme Court denied writs without comment. *State of Louisiana ex rel. Kevin Narcisse v. State of Louisiana*, 2011-KH-2831, 98 So.3d 809 (La. 2012); [rec. doc. 1-3, pg. 34].

Petitioner filed his federal *habeas corpus* petition on October 22, 2012.  Petitioner asserts the same claims he asserted on direct appeal and in the state post-conviction proceedings. These claims are as follows: (1) petitioner was subjected to an unduly suggestive and improperly conducted photographic line-up; (2) insufficiency of the evidence[4]; (3) erroneous denial of petitioner's challenge for cause regarding juror Irving Thomas; (4) prosecutorial misconduct for allowing perjured testimony to go uncorrected; (5) denial of a full and complete appeal because of an incomplete record; (6) improper comment by the trial judge during voir dire; (7) ineffective assistance of counsel because counsel (a) failed to properly investigate and discover the case, (b) failed to present an adequate defense, (c) failed to object and take supervisory writs on bias of ceratin jurors, (d) failed to object to demonstration of a bloody shirt to the jury, and (e) cumulative effect of these errors constituted ineffective assistance; and (8) police officers failed to obtain exculpatory evidence.

Noting that it appeared that petitioner's Third, Fourth, Sixth and Eighth claims were barred by the doctrine of procedural default, the undersigned took no *sua sponte* action and, instead, instructed the State to address the procedural default doctrine in its Response to the Petition.  Petitioner was also provided an opportunity after the State's responsive pleadings to file a Reply.  [rec. doc. 10].

---

[4]Petitioner incorporates a claim of erroneous denial of his motion for post-verdict judgment of acquittal in this argument.

The State has filed an Answer [rec. doc. 18, re-filed including a table of contents as rec. doc. 21] and, thereafter, filed the State court record.[5] [rec. doc. 26].  Petitioner filed no Reply.  This Report and Recommendation follows.

## LAW AND ANALYSIS

### I.  Procedural Default

The State argues that petitioner's Third, Fourth, Sixth and Eighth claims are procedurally defaulted.  Given the above procedural history and the undersigned's review of the entire state court record, the State's position is well taken.

The scope of federal *habeas* review is limited by the intertwined doctrines of procedural default and exhaustion. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claim. *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir. 1999) *citing Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

---

[5]The Clerk of Court for the Parish of St. Martin was unable to find the record.  However, the record was found in the Third Circuit Court of Appeal.  The State believes that the district court record was erroneously incorporated into the appellate record while the case was on direct appeal. Records pertaining to petitioner's post-conviction proceeding have been supplied by petitioner.

The record is clear that the following claims are traditionally procedurally defaulted because the state courts relied on one or more procedural rules to deny relief:

> A.  erroneous denial of petitioner's challenge for cause regarding juror Irving Thomas (claim 3) denied citing La.C.Cr.P. art. 800(A);
>
> B.  prosecutorial misconduct for allowing perjured testimony to go uncorrected (claim 4) denied citing La.C.Cr.P. arts. 841(A) and 930.4(B) and (C);
>
> C.  improper comment by the trial judge during voir dire (claim 6) denied citing La.C.Cr.P. arts. 930.4(B) and (C);
>
> D.  police officers failed to obtain exculpatory evidence (claim 8) denied citing La.C.Cr.P. arts. 930.4(B) and (C).

Thus, these claims are subject to dismissal with prejudice because they are procedurally barred.

The "traditional" procedural default doctrine applies to bar federal *habeas corpus* review when a state court declines to address a prisoner's federal claims because the prisoner failed to follow a state procedural rule.  *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.  When a state court denies relief on both procedural and substantive grounds, application of the procedural default doctrine is not precluded.  *Soria v. Johnson*, 207 F.3d 232, 249 (5th Cir. 2000) *citing Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999). Thus, a claim denied on the basis of a state procedural rule is procedurally defaulted even if the state court alternatively reaches the merits of the claim.  *Id.*

Federal courts typically refuse to reach the merits of questions of federal law if the state courts have expressly relied on an "adequate and independent" state procedural

ground in refusing to review the claim.  *See Sones v. Hargett*, 61 F.3d 410, 416-417 (5th Cir. 1995) *citing Coleman*, 501 U.S. at 731 and *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). "An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998) *citing Amos v. Scott,* 61 F .3d 333, 339 (5th Cir. 1995).  A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id. citing Lott v. Hargett* 80 F.3d 161, 165 (5th Cir. 1996).  A procedural rule is "independent" when the last state court rendering a judgment in the case "clearly and expressly" indicates that its judgment rests on the procedural ground. *Amos*, 61 F.3d at 338.

On direct appeal, the Louisiana Third Circuit Court of Appeal found claim 3 barred by application of La. Code Crim.P. art. 800(A).[6]  The Louisiana Supreme Court denied petitioner's request for discretionary review without comment.  *State of Louisiana v. Kevin Narcisse*,  19 So.3d 471 (La. 2009).  In post-conviction proceedings, the trial court relied on La. Code Crim.P. arts. 841(A)[7] and 930.4[8] when denying relief.  The Third

---

[6]Article 800(A) provides as follows: "A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling."

[7]Article 841(A) sets forth the "contemporaneous objection rule" as follows:"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."

[8]Articles 930.4(B) and (C) preclude post-conviction review of a claim of which the petitioner had knowledge, and "inexcusably" were not raised in the trial court prior to conviction or on appeal after conviction.

Circuit found no error in the trial court's post-conviction ruling, and the Louisiana Supreme Court denied writs without comment. *State v. Narcisse*, 10-KH-1391 (La. App. 3 Cir. 2011); *State of Louisiana ex rel. Kevin Narcisse v. State of Louisiana*, 2011-KH-2831, 98 So.3d 809 (La. 2012).  Accordingly, the last reasoned decisions on petitioner's claims, that of the Third Circuit on direct appeal and that of the trial court in post-conviction proceedings, respectively, clearly and expressly relied on  state procedural rules as a basis for their Judgments.[9] *See Harris* and *Sones, supra*.

The procedural rules relied on by the Third Circuit and the trial court in the sole reasoned decisions on petitioner's claims satisfy both requirements. Petitioner herein makes no showing that the rules are not strictly or regularly followed, or evenhandedly applied.  Thus, the state court procedural rules are presumed "adequate."  Indeed, review of published  Louisiana jurisprudence establishes that the Louisiana courts regularly invoke these rules to preclude review of similar claims asserted in post-conviction proceedings.  Furthermore, the rules are "independent" because the sole reasoned judgments on petitioner's claims, that of the Third Circuit and the trial court, respectively, expressly relied on these state procedural rules as a basis for their rejection of petitioner's appeal and post-conviction claims.

---

[9]The Louisiana Supreme Court did not articulate reasons for its denial of discretionary review on appeal or writs in post-conviction proceedings. However, where there has been a reasoned state court judgment which explicitly rejects the federal claim on state procedural grounds, subsequent unexplained judgments upholding the previous judgment or rejecting the claim are presumed to rely upon the same ground. In other words, when the last reasoned decision on the claim explicitly relied upon a state procedural default, federal courts must presume that later decisions rejecting the claim "did not silently disregard that bar and consider the merits."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

This Court may therefore refuse to review the merits of these claims unless petitioner demonstrates that he should be excused from application of the procedural default doctrine. This he can do by showing cause[10] and prejudice for the default or by showing that a miscarriage of justice[11] will result from the denial of federal *habeas* review. *See Finley*, 243 F.3d 215, 220-221 (5th Cir. 2001); *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565*; McCleskey v. Zant*, 499 U.S. 467, 493-495, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1996); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Sones*, 61 F.3d at 418; *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106, 107-108 (5th Cir. 1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir. 1996) *quoting McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

---

[10]In *Murray v. Carrier*, the Supreme Court explained that "cause" requires an impediment external to the defense:

"[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard."

*Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted).

[11]In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that, as a factual matter, he did not commit the crime of which he was convicted. *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998); *Ward*, 53 F.3d at 108.  Thus, the petitioner must make a "colorable showing of factual innocence." *Callins*, 89 F.3d at 213 *quoting McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

By Order requiring the State to respond to the instant petition, petitioner was placed on notice that the procedural default doctrine might be applicable to his claims, and, accordingly by right of reply, petitioner was given an opportunity to present valid reasons why his claims are not subject to the procedural default doctrine. [rec. doc. 10]. Petitioner, however, has not filed a Reply and, accordingly, has failed to present any valid argument as to why his claims are not barred by the procedural default doctrine.[12]

Because petitioner has failed to demonstrate cause for his default, this court will not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

Further, petitioner has failed to demonstrate that, as a factual matter, he is actually innocent of the crime of which he was convicted.  Thus, he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claims.  Accordingly, petitioner cannot avoid procedural default on grounds of actual innocence.

Based on the above, the undersigned finds that petitioner's claims for erroneous denial of petitioner's challenge for cause regarding juror Irving Thomas (claim 3), prosecutorial misconduct for allowing perjured testimony to go uncorrected (claim 4), improper comment by the trial judge during voir dire (claim 6) and that police officers failed to obtain exculpatory evidence (claim 8) are procedurally defaulted.  Therefore, this Court is precluded from reviewing the merits of these claims.

---

[12]Petitioner was provided a second opportunity to Reply to the State's assertion of  the procedural default doctrine after the filing of the State Court record. [rec. doc. 23].  However, Narcisse again did not address that issue by Reply.

**II. Merits Review**

In light of the above, the only claims which are properly before this Court for review on the merits include the following: petitioner was subjected to an unduly suggestive and improperly conducted photographic line-up (claim 1); insufficiency of the evidence (claim 2); denial of a full and complete appeal because of an incomplete record (claim 5); and ineffective assistance of counsel because counsel (a) failed to properly investigate and discover the case, (b) failed to present an adequate defense, (c) failed to object and take supervisory writs on bias of ceratin jurors, (d) failed to object to demonstration of a bloody shirt to the jury, and (e) the cumulative effect of these errors constituted ineffective assistance (claim 7).

These claims are addressed below.

### *Standard of Review*

This *habeas* petition was filed on October 23, 2012; therefore the standard of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[13]  AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of

---

[13]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief . . . exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact).  In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions." *Montoya ,* 226 F.3d at 403-04  *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

federalism, comity, and finality of judgments.  *Montoya v. Johnson*, 226 F.3d 399, 403-04

(5th Cir. 2000) *citing Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334

(1989) and  *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389

(2000)[14] (noting that AEDPA "placed a new restriction on the power of federal courts to

grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted with
respect to any claim that was adjudicated on the merits in State court
proceedings unless the adjudication of the claim –

> **(1)** resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this Court must give

deference to a state court decision for "any claim that was adjudicated on the merits in

state court proceedings" unless the decision was either "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or the decision "was based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(2).

---

[14]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the Court with respect to other aspects of the opinion which have no bearing on the issues herein.  Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief.  *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and 'correct' error in state court proceedings, but must exercise a more limited review . . . ." *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court.  *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a  set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) *citing Williams,* 120 S.Ct. at 1523;  *Montoya,* 226 F.3d at 403-04 *citing Williams*, 120 S.Ct. at 1523.  "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Dowthitt,* 230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing Williams,* 120 S.Ct. at 1523.  The

14

standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404 *citing Williams,* 120 S.Ct. at 1521-22.  A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . [r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741.  Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  *Id.*  Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding.  *Id. citing* 28 U.S.C. § 2254(d)(2); *Knox,* 224 F.3d at 476 *citing Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir. 2000).

In sum, "[a] state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011). Thus, under § 2254(d), "[a]s a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.  "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786.

**Claim 1: Photographic Line-up**

Petitioner asserts that he was subjected to an unduly suggestive and improperly conducted photographic line-up.  This claim was addressed and denied on the merits by the Third Circuit on direct appeal.  After reviewing the trial court's ruling, the transcript of the hearing on the motion to suppress the identification and the actual photographic lineup, citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Third Circuit considered the relevant factors originally set forth in *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972) and determined that there was no "undue suggestion" and " little likelihood of a misidentification."  *State v. Narcisse*, 2008 WL 4927372, *2-6 (La. App. 3ʳᵈ Cir. 2008).[15] Thus, in order to prevail on this claim, Narcisse must show that the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).  Narcisse has not sustained this burden.

---

[15]The Third Circuit found that "there was no intention to create undue suggestion and there was little likelihood of a misidentification", finding as follows:

> "[w]hile only two of the individuals in the line-up were shown wearing red, it does not appear Defendant was picked because of his clothing.  All of the individuals had similar skin color and facial features, and all had dreadlocks of various lengths.  Broussard testified that the shooter's dreadlocks were about two inches long.  In the photographic line-up the second individual wearing red had dreadlocks approximately two to three inches long, while Defendant's dreadlocks appeared to be much shorter.  Both witnesses who identified Defendant within six hours after seeing him were positive of their identifications. . . . In the current case, the witnesses had a clear view of the accused and were positive in their identifications. . . .

*Id.* at *6.

16

The "admission of evidence deriving from suggestive identification procedures" can violate the due process rights of criminal defendants. *See Neil v. Biggers*, 409 U.S. 188, 196, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *see also United States v. Sanchez,* 988 F.2d 1384, 1389 (5th Cir. 1993) *citing Moore v. Illinois*, 434 U.S. 220, 227, 98 S.Ct. 458, 464, 54 L.Ed.2d 424 (1977). Convictions based on eyewitness identification at trial following a challenged pretrial identification "will be set aside on that ground only if the  . . . identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons,* 390 U.S. at 384; *Manson*, 432 U.S. at 114.

Courts employ a two-step analysis to determine whether there is a Constitutional violation: "first, [courts] determine whether the identification procedure was impermissibly suggestive; if it was, [courts] determine whether, under the totality of the circumstances, the suggestiveness led to a substantial likelihood of irreparable misidentification." *United States v. Burbridge*, 252 F.3d 775, 780 (5th Cir. 2001); *see also Scott v. Michael*, 488 Fed. Appx. 887, 889 (5th Cir. 2012) *citing United States v. Shaw*, 894 F.2d 689, 692 (5th Cir. 1990) (internal quotation marks omitted).

The Supreme Court enumerated five factors for determining whether irreparable misidentification resulted from an impermissibly suggestive identification procedure: the opportunity of the witness to view the criminal at the time of the crime, the witness'

degree of attention, the accuracy of the witness's prior description of the criminal, the

level of certainty demonstrated at the confrontation, and the time between the crime and

the confrontation. *Neil*, 409 U.S. at 199-200; *Manson*, 432 U.S. at 114 *citing Neil, supra*.

*See also Herrera*, 904 F.2d at 947.  Thus, utilizing these factors, even if the identification

procedure was impermissibly suggestive, the identification may nevertheless be

sufficiently reliable under the totality of the circumstances, and therefore admissible.  *See*

*Biggers*, 409 U.S. at 198 (holding that suggestiveness alone is not enough to exclude an

identification, but must be measured under a totality of the circumstances test), *Manson*,

432 U.S. at 106 ("A suggestive and unnecessary identification procedure does not violate

due process so long as the identification possesses sufficient aspects of reliability. . . .").

The Third Circuit found that while only Narcisse and one other individual in the

line-up were wearing red, it did not appear that Narcisse was picked because of his

clothing. The court also found that all of the individuals had similar skin color and facial

features, and all had dreadlocks of various lengths.  Moreover, the court noted that one of

the eyewitnesses (Broussard) testified that the shooter's dreadlocks were about two inches

long, similar to the second individual wearing red who had dreadlocks approximately two

to three inches long, while Narcisse's dreadlocks appeared to be much shorter. *State v.*

*Narcisse*, 2008 WL 4927372, *6 (La. App. 3rd Cir. 2008).

The Third Circuit apparently concurred in the trial court's ruling that even though

Department of Justice guidelines for conducting a photographic line-up are not followed,

a photographic line-up can nevertheless be reliable based on the *Neil v. Biggers* factors. In so finding, the Court expressly stated that both witnesses who identified Narcisse had a clear view of the perpetrator, identified Narcisse within hours after seeing the shooting and were positive in their identifications.  Thus, even assuming the out-of-court identification procedure was impermissibly suggestive, under the requisite totality of the circumstances, there was no substantial likelihood of misidentification.  *See Id.*

The record supports the Third Circuit's determination.  Both eyewitnesses, Vanity Archangel and Shawn Broussard, had ample opportunity to view the perpetrator during the drug transaction and ensuing argument.  Archangel testified that she had a clear view of Narcisse's face when he was arguing with Villery through the back driver's side window, which was down at the time, when Narcisse was only an arms length away from her[16], again when Narcisse walked around to the passenger side of the car through the rear view mirror and passenger mirror[17], and again when Narcisse ran past her after she had exited the vehicle and then turned back toward her when he grabbed Archangel's boyfriend.[18]

Broussard testified that he had an unobstructed view of the shooter's face when the shooter leaned into the car's passenger window to hand drugs to Villery.[19]  While the

---

[16]tr. pg. 287, 290-291, 317-318, 321

[17]tr. pg. 287, 320

[18]tr. pg. 293, 327, 328-329

[19]tr. pg. 382, 391-392

19

pre-identification descriptions given by Archangel and Broussard gave no details on the perpetrator's face, the major aspects of his appearance (skin complexion, hair style) and attire (red shirt or jacket) which they described were consistent.[20]

Moreover, both witnesses identified Narcisse as the shooter within five to six hours of the shooting.[21]  Finally, both were certain that Narcisse was the shooter. Archangel testified that she was "almost positively sure that [Narcisse] was the guy who shot [her] boyfriend"[22], that Narcisse looked "almost exactly like" the shooter[23] and that after considering each photo, she was "definitely sure" she picked the shooter.[24] Broussard testified that it didn't take him long to pick out Narcisse[25], that Narcisse's photograph "looked like the shooter"[26] and that he was "very certain"that the person he picked in the photo lineup was the shooter.[27]

Furthermore, Broussard denied picking Narcisse based on his red attire, instead unequivocally stating that his identification was based on his recollection of Narcisse's

---

[20]tr. pg. 297-298, 313, 379, 390-391

[21]tr. pg. 328

[22]tr. pg. 309

[23]tr. pg. 312, 326

[24]tr. pg. 310

[25]tr. pg. 397

[26]tr. pg. 397-398

[27]tr. pg. 382, 386

face,  "a face like [Broussard] ain't ever seen before."[28] [29]

The Court further notes that petitioner's claim of impermissible suggestiveness is belied by the fact that the third eyewitness, Jacobe Villery, did not pick Narcisse or any of the other individuals out of the photographic lineup as the perpetrator, despite the fact that Villery described the shooter at the scene as wearing a red jacket and Narcisse and only one other individual were depicted wearing red in the lineup.[30]

Moreover, the evidence presented at trial does not establish that the viewing of the photograph of Narcisse included in the photographic line-up led to an unreliable identification. To the contrary, the testimony of both witnesses was consistent with their suppression hearing testimony, and suggests the opposite.  Based on their observations at the crime scene, both expressed certainty that the individual who shot West was petitioner.[31]

Under these circumstances, petitioner has not demonstrated that the Third Circuit unreasonably applied clearly established federal law or rendered a decision that was based

---

[28]tr. pg. 399

[29]Furthermore, the Department of Justice Guidelines are just that, Guidelines which are not binding on this Court. *See United States v. Knight*, 49 Fed. Appx. 215, 218 fn. 2 (10th Cir. 2002); *United States v. Fields*, 2012 WL 1429244, *1 (W.D. Ky. 2012).  As noted by the Western District of Kentucky, the Guidelines are "a compilation of best practices to guide investigations, but it is not binding on law enforcement or district courts."  *Fields*, 2012 WL 1429244 at *1.  "In fact, the handbook itself states that it does "not necessarily reflect the official position of the U.S. Department of Justice" and that "[t]he report 'is not intended to create, does not create, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party.'" *Id. citing* " Eyewitness Evidence: A Guide for Law Enforcement, U.S. Dep't of Justice (1999), http://www.ncjrs.gov/pdffiles1/nij/178240.pdf.

[30]tr. pg. 343, 356, 359, 361, 369

[31]tr. pg. 1378-1379, 1380-1381, 1387, 1270-1274, 1286, 1295

on an unreasonable determination of the facts in light of the evidence presented.

Moreover, Narcisse fails to show that the Third Circuit's ruling "was so lacking in

justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at 786–87.

*Habeas* relief on this claim is therefore not warranted.

**Claim 2: Sufficiency of the Evidence**

Petitioner argues that there was insufficient evidence to support his second degree

murder conviction because there was insufficient credible testimony to establish that he,

Narcisse, shot West.  More specifically, petitioner argues that the jury should not have

been permitted to consider Archangel's and Broussard's "tainted identifications" of

petitioner, their testimony and that of Villery were "riddled with inconsistencies", and the

testimony of Brandon Augustine was "highly suspect."  Alternatively, petitioner argues

that, at most, he should have been convicted of manslaughter because West was the

aggressor.

The claim presented to this court is identical to that presented to the Louisiana

Third Circuit Court of Appeal on direct appeal.  In rejecting this claim, the Louisiana

Third Circuit Court of Appeal, extensively analyzed the evidence presented at trial, and

found that the evidence was sufficient to support petitioner's convictions under the federal

standard set forth by the United States Supreme Court in *Jackson v. Virginia.   State v.

Narcisse*, 2008 WL4927372, *6-9 (La. App. 3rd Cir. 2008).   More specifically, noting

that Narcisse's challenges were directed at the credibility of the witnesses, the assessment

of which is for the trier of fact, the court ultimately held as follows:

> Although there were inconsistencies between the witnesses' trial testimonies concerning how many shots were heard, how many people were standing on the corner, what color was the gun, their substantive testimonies were consistent. The three witnesses' descriptions of the events leading up to the shooting i.e., the search for marijuana, the ensuing argument between the victim and Defendant, the Defendant telling the victim to get out of the car, the positions of the victim and Defendant outside the car, the action of the victim in turning and attempting to run away from the car and from Defendant, and the firing of multiple shots, were all consistent. Two of the three witnesses sitting in the car identified Defendant as the shooter from the photographic line-up. Any conflicts in the testimony of the witnesses are matters relating to the evidentiary weight to be accorded each of their testimony and not the sufficiency of the evidence as a whole to convict Defendant. A review of the record demonstrates there was sufficient evidence from which the jury could reasonably have found Defendant guilty of second degree murder.

> \*          \*          \*

> It was for the jury as fact finder to accept or reject some or all of the testimony of [Augustine]. A review of the record as a whole reveals the testimony of the witnesses at trial, along with all the other evidence presented, established consistent facts upon which the jury apparently based its decision. Although there were some inconsistencies in the witnesses' testimonies, two of the three witnesses in the car identified Defendant as the shooter, as did Defendant's cousin, who was his drug runner. Moreover, the testimonies were not refuted by physical evidence. Finally, Defendant fled the scene and evaded the police for six weeks. Evidence of flight, concealment, and attempt to avoid apprehension indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may have inferred guilt. Accordingly, considered in a light most favorable to the State, a rational trier of fact could have found Defendant guilty of second degree murder beyond a reasonable doubt.

*Narcisse*, 2008 WL 4927372, at \*9 (internal citations omitted).

Under the appropriate standard of review, this Court cannot find that the state court's decision was contrary to, or an unreasonable application of, federal law, nor that the state court's factual determinations were unreasonable in light of the state court record.  Accordingly, the Third Circuit's decision cannot be disturbed.

The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979) (emphasis added); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991) *quoting Jackson*, 443 U.S. at 319.  Thus, a federal court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypothesis consistent with the defendant's claim of innocence."  *Gibson*, 947 F.2d at 783.  Stated differently, an applicant is entitled to *habeas corpus* relief only if it is found that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id. citing Jackson,* 443 U.S. at 324; *West v. Johnson,* 92 F.3d 1385, 1393 (5th Cir. 1996) *citing Jackson*, 443 U.S. at 322-26.

This court applies the *Jackson* standard "giving great weight to the state court's determination."  *Gibson*, 947 F.2d at 782, 786; *Porretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987).  Both direct and circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir.

24

1990) *citing Jackson*, 443 U.S. at 319, 324-25, 99 S.Ct. at 2789, 2792; *Pate v. Wainwright*, 607 F.2d 669, 670 (5th Cir. 1979) (*per curiam*). The fact that most of the evidence against a defendant was circumstantial does not change the standard of review. *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1305 (5th Cir. 1991) *citing United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir. 1989).

Contrary to petitioner's position, as correctly noted by the Louisiana Third Circuit Court of Appeal, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, as those determinations are the exclusive province of the jury.  *United States v. Young*, 107 Fed.Appx. 442, 443 (5th Cir. 2004) *citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *Garcia*, 995 F.2d at 561 *citing United States v. Greenwood*, 974 F.2d 1449, 1458 (5th Cir. 1992).  *See also Green v. Johnson,* 160 F.3d 1029, 1047 (5th Cir. 1998) *citing Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.").  Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) *citing United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999).

Accordingly, "whether judges doubt the credibility of a witness . . . is beside the point . . . ." *Greenwood*, 974 F.2d at 1458.  The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder.  *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

25

Under Louisiana law, second degree murder is (1) the killing of a human being when the defendant had a specific intent to kill or to inflict great bodily harm, or (2) the killing of a human being when the defendant is engaged in certain enumerated crimes which crimes include armed robbery.  La. R.S. 14:30.1(A)(1) and (2).  Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. La.R.S. 14:10(1)*; State v. Brooks*, 839 So.2d 1075, 1079 (La. App. 2nd Cir. 2003) *citing State v. Lindsey*, 543 So.2d 886 (La. 1989).

Since specific intent is a state of mind, it need not be proved directly, but may be inferred from the circumstances of the transaction and the actions of the defendant.  *State v. Graham*, 420 So.2d 1126, 1127 (La. 1982); *State v. Broaden*, 780 So.2d 349, 362 (La. 2001); *State v. Harris*, 812 So.2d 612, 618 (La. 2002). Pointing a gun at the victim and firing the gun has been found to be sufficient evidence to infer specific intent to kill or do great bodily harm.  *Brooks*, 839 So.2d at 1079 *citing State v. Procell*, 365 So.2d 484 (La. 1978).  Moreover, the discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person.  *Id. citing State v. Maxey*, 527 So.2d 551 (La. App. 3rd Cir. 1988); *Broaden,* 780 So.2d at 362.

The evidence was extensively summarized by the Third Circuit as follows.

Villery, Archangel's stepbrother, present in the car at the time of the shooting, testified Archangel and the victim traveled from New Orleans to visit family. He testified he was sitting in the back seat behind his stepsister, who was driving, and they were looking for some marijuana, when Broussard, who was sitting next to him in the back seat, saw a person

identified as "B" standing on a street corner. Broussard told "B" they wanted to buy some marijuana and Villery gave "B" five dollars to make the purchase. "B" then went to another person, (later identified as Defendant) who came up to the car and gave Villery a small bag of marijuana. He stated he could not describe the person "B" gave the money to, but said that he had on "sweats, green shirt, red jacket, white on the collar, and that his hair was styled in "short dreads." He testified he told the man with the marijuana (Defendant) that "it wasn't five dollars worth." Defendant then put a little more marijuana in the bag and said, "If it ain't enough you can give it back, it's gonna sell regardless." Villery then handed the bag to the victim who was sitting in the front passenger's side of the car. He stated the victim and the man then "exchanged words" whereupon Defendant told the victim to get out of the car. Villery testified the victim then got out of the car to confront Defendant. Meanwhile, the man in the red jacket (later identified as Defendant) walked around to the back side of the car. Villery stated that as soon as the victim got to the back corner of the car the victim squatted down with the palms of his hands on the ground and then turned and began running across the street, away from the car and away from Defendant. He saw Defendant extend his arm upward and start shooting. He recalled hearing three shots. He testified that no one in the car had a weapon. Villery could not pick out the shooter from the pictures shown to him in the photographic line-up and stated that he could not say that Defendant was the shooter.

Shawn Broussard's testimony essentially corroborated Villery's testimony. He was sitting in the back seat behind the victim. He described the man who brought the marijuana to the car as wearing a red jacket and sporting "short dreads". He stated he heard five or six shots. He further testified, later the same day at police headquarters when he was shown a photographic line-up, he identified Defendant as the shooter. He also identified Defendant at trial as the man who shot the victim.

Brandon "B" Augustine testified he was Defendant's first cousin. He was apparently Defendant's drug runner at the scene. He stated they had been friends all of their lives. He testified his cousin wore his hair in "dreads" at the time of the shooting. His version of the events leading up to the "lil' altercation" was consistent with the testimonies of Villery and Broussard. He stated, however, when the victim got out of the car, he went around to the back of the car from the passenger side going toward the driver's side and approached Defendant and it "look like he (the victim) was going to do

27

something". At first he testified, although he heard shots, he did not see a gun in his cousin's hand because he had run away before the shooting. However, he then admitted that he had told the grand jury that he saw Defendant with a gun. He further admitted he told the grand jury his cousin admitted shooting the victim, but then explained that he lied to the police because he was afraid as he had witnessed a murder. At trial, on redirect examination, Augustine told the jury he did see Defendant shoot the victim. Augustine testified as he was running away from the car he heard the victim say, "[G]et my gun, get my gun," after he had been shot. Clearly, the jury observed for themselves the prior inconsistences in this witness' testimonies but obviously believed his in-court testimony which was consistent with the other witnesses and physical evidence presented at trial.

Vanity Archangel testified she and the victim had just become engaged to be married. She described the shooter as not tall, with "dreads," and that he had on something red like "A T-shirt or pullover maybe. A jacket or something. It was just red." She got out of the car to try and stop the confrontation which she thought was about to take place. She stated she saw something silver come out of Defendant's pocket. After she heard shots fired, she started toward the victim. She said the shooter ran up from behind her, grabbed the victim for a second, then ran off. A short time later, only hours after the shooting, she picked Defendant out of the photographic line-up as the shooter. At trial, she identified Defendant as the shooter. She further testified as she got to the victim, he was wobbling and talking crazy. He said, "Baby, get the gun." She thought that he may have been talking about a small BB gun she had bought for her cousin which may have been in the trunk of the car at the time. Her testimony seemed to indicate the victim was not coherent.

Brandon "B" Augustine's testimony was perhaps the most problematic of the eyewitness testimonies. At trial, he stated he lied to the grand jury about seeing his cousin shoot the victim or that his cousin admitted to him he fired the shots that killed the victim; however, as noted above, he reluctantly admitted at trial he saw his cousin shoot Robert West. Donnie Lasher, a detective with the Iberia Parish Sheriff's Office, testified he interviewed Augustine the day after the shooting, and Augustine told him four different versions, including that he was never there; he had left before the shooting; and that he was walking his dog when he heard the shots. Detective Lasher stated Augustine never once said he saw a gun in his cousin's hand during the interview. However, after Defendant was taken into custody, Augustine

28

testified before the grand jury and at trial that he saw Defendant with a gun at the time of the shooting. At trial, he testified he saw his cousin, Defendant, shoot the victim multiple times as he testified there was no one else present outside the car; and, as he was running from the scene, he heard the shots and saw his cousin shooting the victim.

In light of the above, viewing the evidence in the light most favorable to the prosecution as is required by *Jackson* and its progeny, the evidence presented at trial was more than sufficient to sustain petitioner's second degree murder conviction on *habeas* review.  Considering  the "great weight" afforded  to the state court's determination and the above summarized evidence, the undersigned finds that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

As recognized by the Third Circuit, although there were inconsistencies between the witnesses' trial testimonies concerning how many shots were heard, how many people were standing on the corner and what color the gun was, their substantive testimonies were consistent.  As he did in the Third Circuit on direct appeal, petitioner urges this Court to make credibility determinations and to weigh the evidence in his favor. However, on a sufficiency of the evidence review, it is not the province of this Court to make credibility determinations or to review the weight of the evidence accepted by the jury. *See Young, Garcia, Greenwood, Green* and *Jackson*, *supra*.

Although the jury could have rejected the eyewitness testimony and could have made contrary inferences from the evidence presented, the jury chose instead to credit the testimony of Archangel, Broussard and Villery, as well as that of Augustine, to the extent

that he ultimately admitted having seen his cousin, Narcisse, shoot West.  Their testimony establishes that petitioner pointed the gun at West and fired at close range, while West was unarmed and, according to Archangel, Broussard and Villery, while West was attempting to run away from Narcisse.  This testimony is more than sufficient to establish that petitioner had the requisite specific intent to kill West.  *See Brooks citing Procell*, and *Maxey*, *supra*.; *Broaden*, *supra*.

Moreover, while petitioner discredits Augustine's testimony because of alleged inconsistencies between his statements to police, his grand jury testimony and his ultimate trial testimony (which was contrary to his initial trial testimony), the jury apparently found that these discrepancies were entitled to little, if any, weight.  Augustine explained that he did not tell the police the truth because he was scared and did not want to see his cousin go to prison for the rest of his life. [tr. pg. 1341].  Moreover, after being confronted with his testimony at the May 23, 2007 Motion hearing (wherein Augustine testified that he saw Narcisse raise his arm while holding a gun and then shoot West twice), Augustine confirmed that he indeed saw Narcisse raise the gun and shoot West. [tr. pg. 1337-1338, 1338, 1340, 1344-1345].   The State presented a reasonable explanation for Augustine's conflicting testimony –  during Augustine's prior in-court testimony there were no family members present and there was no jury. [tr. pg. 1338-1339]. The jury apparently believed Augustine's final trial testimony, which it was entitled to do.

This Court cannot find the testimony accepted by the jury so incredible or insubstantial that, as a matter of law, it can be discounted.  Petitioner's complaints are therefore meritless.

Finally, petitioner alternatively argues that, at best, the evidence supports a manslaughter conviction because West was the aggressor.

Manslaughter, like second degree murder, requires proof of specific intent. However, in manslaughter, the offense is committed in sudden passion or heat of blood "caused by provocation sufficient to deprive an average person of his self-control and cool reflection."  *State v. Harris*, 812 So.2d 612, 618 (La. 2002); La. R.S. 14:31(A)(1). Thus, to reduce second degree murder to manslaughter, the defendant must present evidence to show that the homicide was committed in "sudden passion" or "heat of blood" immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection.  *State v. Journet*, 629 So.2d 1387, 1390 (La. App. 3rd Cir. 1993).

"Sudden passion" and "heat of blood" are not separate elements of the crime of manslaughter, but are mitigating factors that may show less culpability than when a homicide is committed without them. *State v. Brooks*, 839 So.2d 1075, 1078 (La. App. 2nd Cir. 2003).  The defendant is required to prove these mitigating factors.  *Id.*  The defendant is also required to establish provocation. *Journet*, 629 So.2d at 1390. Provocative acts held to rise to the level of mitigating conduct have involved physical

31

threats or actions on the part of the victim. *Brooks*, 839 So.2d at 1078 *citing State v. Lombard,* 486 So.2d 106 (La. 1986) and *State v. Ruff*, 504 So.2d 72 (La. App. 2d Cir. 1987), *writs denied*, 508 So.2d 64 and 65 (La. 1987).  Moreover, Louisiana courts have not derogated from the principle that "mere words or gestures, however offensive or insulting, will not reduce homicide from murder to manslaughter."  *Id. citing State v. Massey*, 535 So.2d 1135 (La. App. 2d Cir. 1988) and *State v. Conerly*, 48 La. Ann. 1561, 21 So. 192 (La. 1896).  Provocation is a question of fact to be determined by the trier of fact.  *Brooks*, 839 So.2d at 1078.

Petitioner's argument  is unavailing.  As noted by the Third Circuit, there is insufficient evidence to support a finding of the mitigating factors of "heat of blood" or "sudden passion".  *See Narcisse,* 2008 WL 4927372 at *11.  Further, the record is devoid of sufficient evidence to support a finding of provocation on the part of West; this lack of evidence of provocation defeats petitioner's claim. *See Journet* and *Brooks*, *supra.*  The verbal exchange between West and Narcisse prior to the shooting is legally insufficient to reduce this homicide from murder to manslaughter.  *See Brooks citing Massey* and *Conerly, supra.*

For these reasons, petitioner's sufficiency of the evidence claim does not warrant federal *habeas* relief.

**Claim 5: Record on Appeal**

Petitioner alleges that he was denied Due Process on direct appeal because the record on appeal was incomplete, thereby preventing him from obtaining a full and

complete appeal.  More specifically, Narcisse complains that certain side bar or bench

conversations were not recorded and transcribed.  As a result, petitioner contends that

"the Court cannot be assured that erroneous rulings from the bench didn't prejudice

Narcisse's case. . . ."

In the state post-conviction proceedings, the trial court denied this claim adopting

the State's response which is, in pertinent part, as follows:

> A defendant is not entitled to relief because of an incomplete record absent
> a showing of prejudice based on the missing portions of the transcript.  The
> Louisiana Supreme Court, in *State v. Hoffman*, 98-3118 (La. 4/11/00), 768
> So.2d 542, declared that the supreme court has never articulated a per se
> rule either requiring the recording of bench conferences or exempting them
> from the scope of La.C.Cr.P.Art. 843.

[rec. doc. 9, pg. 67].

Likewise, with respect to claims of incomplete or omissions in transcripts, federal

courts have held that a prisoner cannot prevail without a showing of specific prejudice.

*See United States v. Neal*, 27 F.3d 1035, 1044 (5th Cir. 1994);  *Mullen v. Blackburn*, 808

F.2d 1143, 1146 (5th Cir. 1987)*; United States v. Anzalone*, 886 F.2d 229, 232 (9th

Cir.1989) ("even assuming there were omissions in the transcripts, appellant cannot

prevail without a showing of specific prejudice. We have previously stated that,

'[a]lthough we believe that the better procedure is to report everything said in the

courtroom, a reversal is not necessary. Defendants allege no prejudice.'"); *Thomas v.

Cain,* 2013 WL 5960808, *5 (E.D. La. 2013) ("to prevail on a claim that the record was

inadequate, a petitioner must prove that the missing portion of the transcript actually

prejudiced his appeal in some manner") *citing  Mullen*, 808 F.2d at 1146,  *McDonald v. Thaler*, 2010 WL 2640135, *18 (S.D. Tex. 2010), *Bozeman v. Cain*, 2010 WL 2977393, *4 (E.D. La. 2010), *adopted*, 2010 WL 2977402 (E.D. La. 2010) and  *Williams v. Cain*, 2008 WL 3363562, *26 (E.D. La. 2006) ("To warrant federal habeas corpus relief on a claim that state court transcripts are unconstitutionally incomplete, the petitioner must support his claims with more than mere unsubstantiated, transparent speculation.").

The Fifth Circuit has held that in cases where a defendant is represented by an appellate lawyer different from the trial lawyer, however, even absent a showing of specific prejudice, reversal of a conviction is required "only when a substantial and significant portion of the transcript is missing." *United States v. Wade*, 19 F.3d 15 (5th Cir. 1994) *citing United States v. Margetis*, 975 F.2d 1175, 1177 (5th Cir. 1992).  The reviewing court considers "whether the missing portion of the transcript prejudiced the defendant by denying him 'effective appellate review.'" *Id.*

Petitioner points to two unrecorded bench conferences, one of which dealt with the use of the Department of Justice Guidelines for conducting photographic line-ups and the other concerning the playing of the video-recorded interview of Broussard, as well as a two pages of the transcript during the cross-examination of Augustine.[32]  Given the

---

[32]It appears that these pages (tr. 1358 and 1359) were transcribed, but were apparently not copied for inclusion in the appellate record because the court reporter's page numbers for these pages skip from 57 to 60. Thus, had the appellate court needed the pages, they (or the parties) could have simply requested them from the court reporter.  Indeed, the record reflects that other pages which were not copied for the record on appeal were provided to the Third Circuit upon request. *See* rec. doc. 26-10, Third Circuit Supplemental Record #2.

evidence of petitioner's guilt, the fact that the line-up guidelines are not binding on law

enforcement or district courts[33], the fact that Broussard and the officers who interviewed

him testified at trial and were therefore subject to cross-examination regarding the video-

taped statement, and that only two pages out of over 630 pages of trial testimony were

omitted, the undersigned finds that the Third Circuit, which affirmed petitioner's

conviction, would have reached the same result had it reviewed the unrecorded bench

conferences and two missing pages of the transcript. These omitted portions of the trial

transcript appear to be neither substantial nor significant; petitioner has made no showing

to the contrary.[34]  Narcisse was therefore not denied effective appellate  review.[35]

For these reasons, Narcisse is entitled to no relief on this claim.

## Claim 7: Ineffective Assistance of Counsel

Petitioner also alleges that he received ineffective assistance of counsel because

counsel (a) failed to properly investigate and discover the case, (b) failed to present an

adequate defense, (c) failed to object and take supervisory writs on bias of ceratin jurors,

(d) failed to object to demonstration of a bloody shirt to the jury, and (e) that the

cumulative effect of these errors constituted ineffective assistance.  These claims are

---

[33]*See* fn. 29, *supra.*

[34]Narcisse has not shown that the missing portion of the transcript actually prejudiced his appeal; petitioner's contention that the un-transcribed portions might have revealed additional errors which could have been asserted on appeal is nothing more than rank speculation, which is insufficient to warrant relief.  *See Thomas, citing Williams, supra.*

[35]Indeed, the Third Circuit's opinion belies petitioner's argument.  The appellate court rendered a detailed fourteen page decision on petitioner's claims, in which extensive portions of the trial testimony were cited. The record was clearly adequate for a meaningful review of petitioner's conviction.

discussed below.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 688.  The court's scrutiny is "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689-90.  Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 *quoting Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1956) (internal quotation marks omitted).  If a tactical decision is "'conscious and informed . . . [it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008*) quoting Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999).

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.[36]  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.  However, self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland's* prejudice element."  *Id.*

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94.  Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's  performance was deficient and that the deficiency prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

---

[36]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment.  *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

> Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

> When a defendant challenges a conviction, the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

**a. Failure to Investigate and Discover the Case**

Petitioner claims that counsel was ineffective for failing to investigate and discover the case.  More specifically, Narcisse alleges that counsel was ineffective for failing to "enunciate and expound" on the following deficiencies: the failure of police to search the vehicle in which the victim and eyewitnesses had traveled, the failure to photograph the entire crime scene and the failure of the police to interview Kimberly Hess and obtain a photograph she allegedly took on her cellular telephone.  He further contends that counsel failed to investigate and challenge the "highly suggestive comments" made by police to Archangel and Broussard during the photographic line-up and the statements of Villery and Broussard.

With respect to the officer's alleged failure to photograph the crime scene and failure to search the vehicle, noting that police did take photographs of the crime scene which were introduced at trial, the trial court found that "counsel did question detectives at trial about who was responsible for taking the photos, the importance of photos, the area that should be photographed around a crime scene and whether detectives reviewed the photos" and that "counsel brought up the lack of police knowledge about the car, as well as the failure to inventory the car despite the police department's knowledge that the car was supposedly an integral part of the crime scene.  The jury was then able to make appropriate credibility decisions about the police testimony and then make appropriate decisions as to whether the State met it's burden of proof."[37] [rec. doc. 1-3, pg. 39].

_____

[37]_See_ tr. pg. 1126-1134, 1139-1142, 1156, 1163-1172, 1000-1003, 1016-1017.

With respect to the failure of the police to interview Kimberly Hess and obtain a photograph she allegedly took on her cellular telephone, noting that the witness was "a mentally handicapped girl" and that the 22 year veteran detective testified that he didn't obtain the cell phone picture because the girl "advised that the photo was of poor quality so she erased it", the trial court found "counsel cross-examined detectives on the existence of the photograph, and suggested that the picture was still obtainable through the phone carrier."  Moreover, "the detective testified that that is information he would have wanted to investigate.  The jury was then able to make an appropriate decision as to credibility and the burden of proof."[38] [rec. doc. 1-3, pg. 39-40].

With respect to the alleged "highly suggestive comments" during the photographic line-up, noting that Narcisse did not state the substance of the alleged comments or how they prejudiced his line-up, the trial court found "counsel did file a motion to suppress both line-ups, and witnesses were at the hearing and trial.  Counsel conducted appropriate cross-examination of both these witnesses. . . . There are no facts to suggest that there was ineffective assistance of counsel as counsel filed a motion to suppress, and there is no evidence of un-investigated 'highly suggestive' comments, except for defendant's broad allegation.  Counsel did not fail to address the issues of the line-ups, and conducted appropriate cross examination of both witnesses."[39] [rec. doc. 1-3, pg. 40].

---

[38]*See* tr. pg. 963, 1010-1015.

[39]*See* tr. pg. 274-315, 329-331, 331-362, 370-371, 373-388, 399-400.  *See also* tr. pg. 445-461, 465-469, 479-520.

Finally, with respect to counsel's alleged failure to investigate and challenge the statements of Villery and Broussard, the trial court found that "counsel filed motions to attempt to address these issues" and, accordingly, Narcisse's "claim that counsel failed to investigate these issues is without merit." In so finding, the court noted that counsel had filed numerous motions addressing the statements of these witnesses, including a "Motion for Specific Request for Grand Jury Transcript of Jacoby Villery, Alternatively an In-Camera Inspection of his Grand Jury Testimony, his Preliminary Hearing, his Written Voluntary Statement and his Tape Recorded Statement", a "Motion for Requests of Information of Threats of Institution of Prosecution, Promises or Inducements to Jacoby Villery, [and a] Motion for  Specific Request for Grand Jury Transcript of Shawn Broussard, Alternatively an In-Camera Inspection of his Grand Jury Testimony." [rec. doc. 1-3, pg. 40].

Narcisse has not shown that the state court's ruling was contrary to, or an unreasonable application of, federal law, nor that the state court's factual determinations were unreasonable in light of the State court record.  Under *Strickland*, counsel need only provide reasonable professional assistance.  *Cullen v. Pinholster*, - - U.S. - - , 131 S.Ct. 1388, 1406–07, 179 L.Ed.2d 557 (2011) (discussing *Strickland* and post-*Strickland* cases). "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Druery v. Thaler,* 647 F.3d 535, 541 (5th Cir. 2011)

*citing Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993) *quoting United States v.*

*Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Petitioner has failed to make that showing.

The record in this case is clear that counsel investigated and challenged all of the

complained of deficiencies and alleged errors of law enforcement officers in this case, as

well as the alleged inconsistencies in the statements given by the witnesses in this case by

pre-trial motion practice and by cross-examination of the officers and witnesses both, at

the hearing on these motions and at trial.[40]   Counsel's actions under the circumstances

were entirely reasonable.   Indeed, from the record before this Court, it appears that

counsel made virtually every challenge to the evidence which was available to petitioner.

Narcisse's claim of ineffective assistance therefore fails the first *Strickland* prong.

Moreover, Narcisse has not shown what further investigation would have revealed,

nor has he shown how further investigation or additional challenges would have helped

---

[40]Defense counsel filed the following pre-trial Motions: Motion for Discovery and Inspection [rec. pg. 37-39], Motion for Preliminary Hearing [*Id.* at 40-41], Second Motion for Discovery and Inspection and Bill of Particulars  [*Id.* at 65-75], Motion for transcripts of impanelling of the grand jury [*Id.* at 82-83], Motion for Specific Request for Grand Jury Transcript of Jacoby Villery, Alternatively an In-Camera Inspection of his Grand Jury Testimony, his Preliminary Hearing, his Written Voluntary Statement and his Tape Recorded Statement  [*Id.* at 84-85, 123-128], Motion for Requests of Information of Threats of Institution of Prosecution, Promises or Inducements to Jacoby Villery [*Id.* at 88-89], Motion for  Specific Request for Grand Jury Transcript of Shawn Broussard, Alternatively an In-Camera Inspection of his Grand Jury Testimony  [*Id.* at 90-92], Motion to Reveal Irregularities in the Grand Jury Proceedings  [*Id.* at 86], Jackson request for "bad act" evidence  [*Id.* at 96-98], Request for Notice of Aggravating Circumstances  [*Id.* at 99-100], Request for victim impact evidence  [*Id.* at 101-102], Motion to Suppress Physical Evidence (search warrant challenge)  [*Id.* at 103-104], Motion to Enhance Sound of DVD of Vanity Archangel's Statements  [*Id.* at 105-107] (April 23, 2007 rec. pg. 153), Motion to Suppress Physical Evidence (search warrant challenge)  [*Id.* at 112-113, 115-122], Motion to Quash  [*Id.* at 129-133], and Motion to Suppress Identifications (photo line-up challenge)  [*Id.* at 134-135, 145-147]. Hearings on these Motions, at the majority of which officers and witnesses were cross-examined by defense counsel, were held on April 26, 2006, January 4, 2007, April 17, 2007 and May 23, 2007. [rec. pgs. 2, 7-9, 10-11, 13-14].

him. He merely speculates that he would have benefitted from more extensive investigation and additional challenges to the evidence. Such speculation, however, does not satisfy Narcisse's burden. He therefore has not satisfied the second *Strickland* prong.

For these reasons, Narcisse is not entitled to relief with respect to this claim.

### b. Failure to Present an Adequate Defense

By this claim, Narcisse again complains that counsel failed to "properly perform pre-trial discovery and investigation, interview[] and call[] witnesses, use[] available witnesses, and then combine[] all of the facts, evidence, and witnesses to properly prepare and present a viable defense" purportedly to challenge "whether the person on trial is actually the person who committed the offense." He further alleges that the testimony of the eyewitnesses was unreliable, coached and manipulated by the prosecution and that "defense counsel did nothing to counter these actions." He additionally complains that counsel failed to interview Kimberly Hess and acquire the photograph she allegedly took on her cell phone to "prove that someone else committed the charged crime."

For the same reasons set forth above, this claim has no merit. The record demonstrates that counsel conducted an adequate pre-trial discovery and investigation, zealously tested the State's evidence by pre-trial motion practice, skillfully examined and cross examined all relevant and material eyewitnesses and law enforcement personnel at motion hearings and at trial, and combined all of the facts, testimony and evidence to present a mistaken identity defense, arguing to the jury that Narcisse was not, in fact, the

shooter.[41]   Counsel's performance was clearly reasonable under the circumstances. Narcisse therefore has failed to satisfy the first *Strickland* inquiry.

Moreover, while Narcisse alleges that counsel's alleged errors were prejudicial and of "constitutional magnitude", such self serving conclusory statements "fall far short of satisfying *Strickland'*s prejudice element." *Sayre,* 238 F.3d at 635 *citing Strickland,* 104 S.Ct. at 2068.  Accordingly, Narcisse has not satisfied the second *Strickland* inquiry.

To the extent that Narcisse complains that counsel failed to interview and call Kimberly Hess at trial, complaints of uncalled witnesses are not favored in federal *habeas corpus* review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of  the content of a prospective witness' testimony are largely speculative.  *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) *citing Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986), *Marler v. Blackburn,* 777 F.2d 1007, 1010 (5th Cir. 1985),  *Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir. 1984), *United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir. 1983), and *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978); *Evans v. Cockrell*, 285 F.3d 370, 377(5th Cir. 2002).  "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland* 's standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's

---

[41]*See* tr. pg. 1415-1424.

performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5ᵗʰ Cir. 1994).

Moreover, where the only evidence of a missing witness's testimony is from the defendant, courts view such claims with great caution.  *Sayre,* 238 F.3d at 636 *citing Lockhart,* 782 F.2d at 1282, *Marler,* 777 F.2d at 1010,  *Murray,* 736 F.2d at 282, *Cockrell,* 720 F.2d at 1427, and *Buckelew* , 575 F.2d at 521.  Thus, "[a] prisoner's bald conclusory assertion that [favorable] witnesses were not called does not serve to 'overcome the strong presumption that his counsel's actions were reasonable.'" *Sayre,* 238 F.3d at 636 citing *Marler,* 777 F.2d at 1010.  Moreover, to demonstrate the requisite *Strickland* prejudice, the petitioner must show not only that the witness' testimony would have been favorable, but also that the witness was available and willing to testify at trial. *Alexander v. McCotter*, 775 F.2d 595, 602 (5ᵗʰ Cir. 1985); *Boyd v. Estelle*, 661 F.2d 388, 390 (5ᵗʰ Cir. 1981).

Narcisse fails to meet this standard.  He does not make any showing of what Kimberly Hess' testimony would have been and his mere speculation is insufficient to justify *habeas corpus* relief.  Specifically, petitioner fails to demonstrate that Kimberly Hess' testimony would have been favorable to the defense or that she was available and willing to testify at trial.  To the contrary, the record reveals the opposite.  Detective Hotard testified that the alleged photograph was of poor quality and had already been erased, that Ms. Hess was "mentally handicapped", and her mother did not want her to become involved.   Moreover, given Ms. Hess' description of the individual she saw at the scene ("black male dressed in a red jacket"), it is not likely that Ms. Hess would have

provided any favorable testimony on Narcisse's behalf.[42]

Finally, by not calling Ms. Hess or attempting to recover the alleged photograph, defense counsel was able to use this missing evidence to undermine the reasonableness of the investigation conducted by law enforcement personnel and cast doubt on their belief that Narcisse was, in fact, the shooter.   Under the circumstances, the challenged action may be considered sound trial strategy which was not "so ill chosen that it permeates the entire trial with obvious unfairness.'" *See Strickland*, at 689; *Cavitt*, 550 F.3d at 440 *quoting Crane*, 178 F.3d at 314.

For these reasons, federal *habeas* relief is not warranted with respect to this claim.

**c. Failure to Object and take Supervisory Writs on Bias of Ceratin Jurors**

Petitioner next alleges that counsel was ineffective for failing to failing to object to unnamed jurors on grounds of bias and to take pre-trial writs with respect to challenges to unnamed jurors who were permitted to serve on the panel.

The state court resolved this claim as follows: "Defendant alleges that counsel was ineffective because jurors were allowed to serve that were not impartial.  The defendant does not specify which jurors served that were not impartial.  Defense counsel did ask the court to excuse some jurors for cause and in some cases was successful.  Furthermore, in a Motion for New Trial, counsel again challenged the presence of certain jurors on the panel.  The Court found that these claims had no merit and again so finds." [rec. doc. 1-3, pg. 40].

---

[42]*See* tr. pg. 963, 1010-1015.

Narcisse has not shown that the state court's ruling was contrary to, or an unreasonable application of, federal law, nor that the state court's factual determinations were unreasonable in light of the State court record.

As was the case in the state courts, Narcisse has failed to specify which juror or jurors he claims were biased and additionally fails to specify the nature of the alleged bias.  Such "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green,* 160 F.3d at 1042-1043.

Moreover, to the extent that petitioner complains that counsel was ineffective because she failed to object to or take writs with respect to juror number 110, Simone Regard, that claim is without merit.  Prior to her selection as a juror, Ms. Regard admitted that her cousin was Sheriff Hebert. However, she stated that they were not close and that her familial relationship would not affect her ability to be fair and impartial.[tr. pg. 573, 612, 697-698].  Clearly, any objection would have been fruitless. Failure to make a futile motion or objection does not cause counsel's performance to fall below an objective level of reasonableness.  *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) *citing Green*, 160 F.3d at 1037; *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) *citing Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990).

After trial, defense counsel learned that Ms. Regard's brother, Robert Babineaux, worked for the Sheriff as a courtroom bailiff; Ms. Regard did not disclose this fact prior

to trial.  Accordingly, counsel filed a Motion for a New Trial.[43]  [rec. pg. 159, 207, tr. pg.

1461, 1470].  The record clearly reveals that defense counsel did not learn of Ms.

Regard's potential bias until after petitioner's trial.  As such, she could not have

challenged Ms. Regard on this ground prior to trial.  Clairvoyance, or in this case an

ability to predict future occurrences, is not a required attribute of effective representation.

*See Sharp v. Johnson*, 107 F.3d 282, 290 at fn. 28 (5th Cir. 1997) *quoting  Garland v.*

*Maggio*, 717 F.2d 199, 207 (5th Cir. 1983).

**d. Failure to Object to Demonstration of a Bloody Shirt to the Jury**

Narcisse alleges that the "showing of the [victim's bloody] shirt to the jury had a

damaging effect and was done to enrage the passions of the jury."  He contends that the

shirt was unduly prejudicial and had little probative value and therefore should not have

been admissible.  He apparently faults counsel for failing to object on these grounds.

In rejecting this claim, the trial court noted that the shirt was introduced in

conjunction with the testimony of the State's medical expert to show where the bullet

wounds entered the body.  The Court accordingly found the shirt was properly admitted

because it had some probative value was not more prejudicial than probative.  Further,

---

[43]After hearing testimony from both Ms. Regard and her brother, Mr. Babineaux, the Court
denied the Motion finding, amongst other things, that Ms. Regard's failure to disclose her brother's
employment caused Narcisse no prejudice because she testified that it had no effect whatsoever on her
verdict, she took an oath to perform her duties fair and impartially, and the evidence showed she did just
that.  Moreover, Babineaux had no involvement with the jury and was not present at the courthouse
during deliberations or the entire last day of the trial.  [tr. pg. 1501-1502].  The record fully supports the
trial court's determination.

while other evidence, such as the autopsy report, proved the same facts, the trial Court found that the introduction of the shirt "did not cause prejudice to the defendant without which the outcome would have been different." [rec. doc. 1-3, pgs. 40-41].

Narcisse has not shown that  the state Court's ruling was contrary to, or an unreasonable application of, federal law, nor that the state court's factual determinations were unreasonable in light of the state court record.

Because the state court found that the bloody shirt was properly admitted, a defense objection would have been futile.  *Preston*, 209 F.3d at 785 *citing Green*, 160 F.3d at 1037; *Johnson*, 306 F.3d at 255) *citing Koch,* 907 F.2d at 527.  Moreover, in light of the overwhelming evidence of petitioner's guilt, the court cannot find that the introduction of the bloody shirt changed the outcome of petitioner's trial.  Accordingly, petitioner has not demonstrated that counsel's alleged error caused him prejudice sufficient to satisfy *Strickland'*s prejudice element.

**e. Cumulative Effect of Counsel's Alleged Errors**

The Fifth Circuit has recognized the "cumulative error doctrine" which provides that "an aggregation of non-reversible errors (i.e. plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial." *United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) *citing United States v. Munoz,* 150 F.3d 401, 418 (5th Cir.1998).  However, in light of the above analysis, petitioner has failed to establish *any* error of constitutional significance in the conduct of

48

his trial.  Petitioner's trial was by no means fundamentally unfair.  Therefore, relief is not

available under the cumulative error doctrine.  *See Williams,* 264 F.3d at 572 (no

cumulative error where defendant failed to identify single error in jury selection);  *Miller*

*v. Johnson,* 200 F.3d 274, 286 fn. 6 (5th Cir. 2000) (petitioner who failed to demonstrate

any error by trial counsel could not establish cumulative error);  *Stoot v. Cain,* 2010 WL

2924883, *24 (W.D. La. 2010) *citing Beall v. Cockrell*, 174 F. Supp.2d 512, 525

(N.D.Tex. 2001) (federal *habeas* relief unwarranted when petitioner failed to demonstrate

any error in his state trial)*, and Badeaux v. LeBlanc,* 2005 WL 3501423, *14 (W.D. La.

2005) *citing Beall, Brigham v. Cockrell*, 2002 WL 1776933, *5 (N.D. Tex. 2002) and

*Campbell v. Dretke*, 2005 WL 2372047, *19 (S.D. Tex. 2005).

## CONCLUSION

For the reasons set forth above;

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED**

**AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties

aggrieved by this recommendation have fourteen (14) days from service of this Report

and Recommendation to file specific, written objections with the Clerk of Court. A  party

may respond to another party's objections within fourteen (14) days after being served

with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

**proposed legal conclusions reflected in this Report and Recommendation within**

**fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §  2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed at Lafayette, Louisiana, October 14, 2014.

_____

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE